**In re QUAKER CITY COLD STORAGE CO.**
**JERPE COMMISSION CO., Inc., v.**
**KENDALL et al.**

**No. 8323.**

Circuit Court of Appeals, Third Circuit.
Argued July 15, 1943.
Decided Oct. 27, 1943.

See, also, 45 F.Supp. 570.

A. C. R. Swenson, of Omaha, Neb. (J. B. Colahan and Townsend, Eliott & Munson, all of Philadelphia, Pa., on the brief), for claimant and appellant.

Morris Wexler, of Philadelphia, Pa. (Schnader & Lewis, Wexler & Weisman, and J. Wesley McWilliams, all of Philadelphia, Pa., on the brief), for debtor.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and KIRKPATRICK, District Judge.

McLAUGHLIN, Circuit Judge.

In June 1940, Quaker City Cold Storage Co., a warehouseman of Philadelphia, had a then general current arrangement with Bennett & Layton, Inc., San Francisco poultry dealers. The original letter of February, 1940, from Bennett & Layton to Quaker City which started the relationship read:

"We are moving a few cars of our extra fancy Delicia Young Toms to be stored with you for our account for later sale.

"Our drafts against you will be on a very reasonable basis, which of course need not be paid until after the arrival of the shipment and inspection of the merchandise by you."

The latter would send carloads of turkeys to the Quaker City company. That company, after receipt of the turkeys, would honor drafts of Bennett & Layton; deliver the turkeys in accordance with the instructions of Bennett & Layton, and receive from the transferee, the amount of the particular draft or drafts plus warehouse charges. The Jerpe company had been through such a transaction with Bennett & Layton and Quaker City in May, 1940.

On June 7, 1940 Bennett & Layton telegraphed Quaker City as follows:

"Quaker City Cold Storage Co.
   "Delaware & Spruce Sts Phila

"Car MP 3405 containing 396 boxes Delicia Young Toms should reach you some time tomorrow Please store this car for the account of the Jerpe Commission Company of Omaha

   "Bennett and Layton Inc."

The turkeys arrived and were stored by Quaker City June 8, 1940. On June 7, 1940, the appellant, Jerpe Commission Co., Inc., wrote Quaker City Cold Storage Co. saying:

"Quaker City Cold Storage Co.,
   "Delaware & Spruce St.,
      "Philadelphia, Pa.

"Gentlemen:

"We are in receipt of copy of wire from Bennett & Layton authorizing you to

transfer to our account 396 boxes Delicia young toms.

"As soon as you advise us the amount necessary to clear your advances advise us and we will see that the check is mailed immediately.

"It is understood this check will be mailed after acknowledgment of transfer to our account of these turkeys. It is understood also that any and all charges are to be borne by Bennett & Layton and turkeys are subject to withdrawal by our company only.

"Let us hear from you.

"Very truly yours,

"Jerpe Commission Co., Inc.

[s] M. Olander."

It was found as a fact both by the Master and the District Court, that said letter was received by Quaker City, June 8, 1940. On that day Quaker City issued non-negotiable warehouse receipts for the turkeys to the Jerpe company. Those receipts stated that the turkeys were held subject to advances of Quaker City, the warehouseman. On June 13, 1940, Bennett & Layton sent the below quoted telegram to Quaker City:

"Quaker City Cold Storage Co.

"Delaware & Spruce Sts—

"You should have received a car of turkeys from us several days ago against which we had a draft in the amount of $8200 Please advise if car has been received and if the draft has been paid—

"Bennett & Layton Inc."

On June 15, 1940, Quaker City paid a draft of Bennett & Layton for $8,200. That draft was one of three outstanding drafts of Bennett & Layton on Quaker City. The Jerpe company, asserting its receipts, demanded the turkeys on June 24, 1940. Quaker City advised Bennett & Layton of this, and the latter telegraphed the following on June 25, 1940:

"Quaker City Cold Storage Co.

"Delaware Ave and Spruce St

"Answering telegram the $8200 draft you paid on June 15th for our account was to be applied by you against car MP3405 containing 396 boxes turkeys.

"Bennett and Layton Inc."

Quaker City refused to turn over the turkeys to the Jerpe company except upon payment by the latter of Quaker City's advance of $8,200, plus storage charges. The Jerpe company sued Quaker City in the Court of Common Pleas, Philadelphia County. Prior to a determination of that action, Quaker City went into bankruptcy. The Jerpe company thereupon filed its claim, for the value of the turkeys, with the trustee. The latter filed objections to it. There was a hearing on the objection before a special master. The master recommended that the objections be sustained. The case then came on before the District Court on Jerpe company's exceptions to the master's report. The District Court sustained the trustee's objections to the Jerpe claim, and dismissed the claim itself. It is from that order of the District Court this appeal has been taken.

The appellant, Jerpe Commission Co., Inc., urges that its non-negotiable warehouse receipts entitled it to possession of the turkeys in question. The appellee contends that the receipts are subject to appellant's above quoted letter of June 7, 1940, and that by reason thereof the appellant must first repay the warehouseman's advances before becoming entitled to the particular turkeys; or rather, their agreed value.

The appellant argues that its letter, admittedly sent by it, June 7, 1940, was not received by Quaker City June 8, 1940, on which date the latter issued Jerpe non-negotiable warehouse receipts for the turkeys. Consequently, that Quaker City issued the receipts without knowledge of the letter and, of course, not relying on it, in any way. The evidence in the case justified both the master and the District Court in finding that said letter was actually received by Quaker City on June 8, 1940. The assistant treasurer of Quaker City, connected with that concern thirty-two years, so testified. He further stated that "in line with the letter (he) issued the non-negotiable warehouse receipts." Explaining this latter phrase, he said, "I meant that in reliance on this letter which we had received, dated June 7—the letter I see, which stated that we should issue non-negotiable receipts, and upon the issuance of them and the sending of them they would reimburse us. That is the reason I issued these receipts." A letter from the Postmaster of Philadelphia, to the effect that an airmail letter from Omaha could have arrived the following day in Philadelphia, was accepted in evidence by both Jerpe and Quaker City. The Master allowed a continuance of the hearing to permit Jerpe to take testimony, as to the writing and mailing of the letter; and when it was received at the Philadelphia Post Office. No such testimony was ever taken

by Jerpe nor did the latter produce any witnesses in contradiction of the Quaker City representative.

With reference to the June 7th letter itself, appellant insists that the word "advances" refers solely to those which had already been made at the time it was written; or at least, as later suggested in "Comments on Appellee's Answer," limited to such advances as Quaker City was, as of June 7, 1940, under some obligation to make.

■ There were no witnesses offered on behalf of Jerpe to justify this proposition. There is nothing in the case to imply any understanding on the part of Jerpe that Quaker City, in the warehouse business in Pennsylvania, had made or rendered itself liable to make advances to a California poultry concern, simply on the strength of a telegram, and without possession of the security. Bennett & Layton, Inc., the California firm, was itself, in financial difficulty before the month was out. No such prior advances, or responsibility therefor, had been made or incurred by Quaker City. The car did not arrive at the Quaker City warehouse until June 8, 1940. The presently suggested interpretation of the word "advances" is quite contrary to Jerpe's own course of dealing with Quaker City and Bennett & Layton, the previous month, in the same sort of matter. From the facts, both the master and the District Court were entitled to find, as they did, that the word "advances" applied to the future and not to something which had already occurred; specifically, that it applied to the $8,200, advance of June 15th, 1940.

■■ The nonnegotiable warehouse receipts on their faces were subject to a lien for the warehouseman's advances. The letter of June 7th agreed to take care of Quaker City's advances; with the check to be mailed "after acknowledgment of transfer to our account of these turkeys." Sufficient evidence was presented by Quaker City to justify the master and the District Court in finding that Quaker City issued the receipts to Jerpe, relying on the latter's promise to pay Quaker City's advances.

It is unquestioned that Quaker City did advance $8,200. On this phase of the case, the appellant presses the point that the admitted advance was not made on the particular car of turkeys. It is true that there is some confusion over the identity of the car. That confusion, however, is more apparent than real. Any needed clarity on this issue is furnished by the above quoted communications between the parties, coupled with the fact that the disputed car was the only one received by Quaker City from Bennett & Layton during the entire month of June 1940. In finding that the $8,200 advance was made by Quaker City on the car involved in this controversy, the master and the District Court are strongly supported by the fact evidence.

The judgment of the District Court will be affirmed.